# Cruzen *v.* Boughner.

*Will—Devise—Contradictory clauses—Devise of coal.*

Testator devised a farm which he described as the "W" farm to his son by language which imported a fee simple title in the land. In a subsequent clause he devised to all of his children as tenants in common "the

whole nine-feet vein of coal underlying the lands mentioned in this my will." By a codicil made some years afterwards he revoked certain provisions for a daughter " excepting the one, referring to her interest in the nine-feet vein of coal mentioned in my first will and testament. . . . The nine-feet vein of coal mentioned in my first will and testament is underlying the two farms known as the ' M' and ' K' farms." The evidence showed that the nine-feet vein was an opened mine worked for years at the date of the will, and lying underneath the " M" and " K" farms. It was not known at the time of the will, nor during the eleven years which elapsed to testator's death, nor until several years thereafter, that the nine-feet vein was accessible on the " W" farm. *Held*, that the son to whom the " W" farm was devised took a fee simple title in both surface and coal in the farm devised to him.

Argued Oct. 21, 1898. Reargued April 30, 1900. Appeal, No. 190, Oct. T., 1898, by plaintiff, from judgment of C. P. Greene Co., April T., 1898, No. 175, non obstante veredicto in case of Lena G. Cruzen v. Otho M. Boughner. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ., on reargument. Reversed.

Assumpsit for purchase money and to determine title to real estate. Before TAYLOR, P. J., specially presiding.

The facts are fully stated in the · opinion of the Supreme Court.

*Error assigned* was in entering judgment for defendant, non obstante veredicto.

*D. T. Watson* and *Franklin P. Iams*, with them *Joseph Patton*, for appellant.—No clause in a will can be rejected if any construction can be given to it which will render every part of it effective: Mütter's Est., 38 Pa. 314; Seibert v. Wise, 70 Pa. 147 ; 2 Williams on Executors, *1081 ; Kline's App., 86 Pa. 363.

The facts existing and known to the testator at the time he executed the will furnish strong aid in arriving at his intention: Postlethwaite's App., 68 Pa. 480.

*Thomas C. Gabler*, for appellee.

OPINION BY MR. CHIEF JUSTICE GREEN, May 7, 1900:

It is not for a moment questioned that the devise to James R. Gray contained in the ·second clause of the will of his father

William Gray, gave an absolute fee simple title to the devisee of the land in question in this case. The words are, "I give, devise and bequeath to my son James Robinson Gray . . . . the Weltner farm situated in Greene County, Pennsylvania, and containing seventy-five acres more or less. Together with all the improvements, farming implements, horses, mules and stock of every description, excepting hogs and cattle being fattened for sale." This devise is without any kind of qualification, and standing alone, it passed a fee simple title in the land to the devisee beyond all doubt. The learned court below however was of opinion that because of a devise contained in the ninth clause of the will, of a vein of coal called the nine-feet vein of coal, to others, the coal underlying the surface of the Weltner farm was included therein, and therefore, that the title of James R. Gray under the second clause was limited to the surface of the land and did not include the underlying coal. This is an affirmative proposition, detracting from the literal words and meaning of the second clause, and requires to be clearly made out in order to defeat the necessary import of the clause. The language of the ninth clause is as follows: "I give, devise and bequeath the whole nine-feet vein of coal underlying the lands mentioned in this my will (and which I believe to be valuable) to my sons James R. Gray, Isaac M. Gray and Sylvanus T. Gray, and to James R. Gray, Isaac M. Gray and Sylvanus T. Gray in trust for my daughters Margaret Weltner, Ann Eliza Blackshere and Harriet B. Blackshere, for their sole and separate use and benefit, and in the case of the death of either one of my daughters, then the trust to continue for the child or children of such daughters deceased. I further direct that the said coal underlying the aforesaid lands shall be held for the interest of my said sons, and by my said sons in trust for my said daughters jointly, my object being to give each of my sons and daughters an equal share in all profits derived from the sale of said coal, or from any royalty, or profits in working or in leasing said coal vein; I direct that any and all interest accruing to my said sons in trust for my said daughters shall be subject to the same conditions heretofore made in this will relating to them."

The question and the only question arising in the case, is whether the coal of the nine-feet vein underlying the Weltner farm passed to the sons and daughters under the ninth clause of

the will. If it did not there is no other part of the will under which any claim to that result can be made.

While it is true that the devise of the coal in the ninth clause is in broad and comprehensive language, to wit: " the whole nine (9) feet vein of coal underlying the lands mentioned in this my will," yet the devise to James R. Gray of the fee simple title to the Weltner farm, is in language of absolute certainty, without any doubt arising as to its meaning, and that language clearly carries the surface of the tract and everything beneath it. The Weltner farm was a part of " the lands mentioned " in the will and would therefore seem to be embraced within the generality of the words describing the lands under which the vein of coal devised laid. But it was abundantly proved on the trial that at the time the will was made, and indeed at all times during the life of the testator, it was not known that there was any nine-feet vein of coal under the Weltner farm, and the fact that it was there was not discovered until some years after his death. And it was also conclusively established by uncontradicted testimony that the nine-feet vein was an opened mine, worked for years at the date of the will and long before, lying underneath the Minor farm and the Knott farm, which were also situated in Greene county, and from which all the coal used by the testator and his numerous tenants was habitually taken. Now while it is of course possible, and indeed quite probable, that if there was no other language in the will than is contained in the second and ninth clauses, describing the lands to be affected by the devise of the nine-feet vein of coal in the ninth clause of the will, it would have to be held that it included that vein when it was afterwards discovered that it did underlie the Weltner farm, yet in point of fact there is another clause of the will which very seriously affects that question.

It is the fourth clause of the third codicil to the will, executed July 2, 1885, and is in the following words: " I also revoke all other papers in my former first will and codicils relating to my daughter Margaret Weltner (excepting the one referring to her interest in the nine (9) feet vein of coal mentioned in my first will and testament her interest to remain as stated in my first will and testament for the benefit of any of her surviving children. The nine (9) feet vein of coal mentioned in my first will and testament is underlying the two farms known as

the Otho Minor farm and the Knott farm." Now the question to be decided is what was the testator's meaning when in the ninth clause of the original will he said, "I give, devise and bequeath the whole nine (9) feet vein of coal underlying the lands mentioned in this my will (and which I believe to be valuable) to my sons James R. Gray," etc. Did he mean thereby all the coal which might then, or at any time in the future, be found in a vein of nine feet in thickness, lying under all the numerous tracts of land which he then owned, some seventeen hundred acres in all, not contiguous but separated from each other by distances as great as two and a half miles, or did he mean the coal contained in a vein of nine feet in thickness which was then, and for a long time before had been, worked and which was underlying the two tracts called the Minor farm and the Knott farm? For some reason he was revoking in the fourth clause of this codicil, his previous devises and bequests in the will and prior codicils in favor of his daughter Margaret Weltner, but he wished to and did, except out of the revocation her interest in the nine-feet vein of coal as given by his will, and that interest he directed should remain for her and for her surviving children. Then for the manifest purpose of defining what he meant by the nine-feet vein of coal devised and given by the will, he added to the fourth clause of the third codicil these words, "The nine feet vein of coal mentioned in my first will and testament, is underlying the two farms known as the Otho Minor farm and the Knott farm." In considering what was his meaning in using these words in the third codicil, it will be of importance to reflect, supposing the same words had been used in the ninth clause of the will when he was devising the nine-feet vein of coal to his sons for their use and as trustees for his daughters, what import would then have been attached to them? The ninth clause of the will would then have read, "I give, devise and bequeath the whole nine (9) feet vein of coal underlying the lands mentioned in this my will (and which I believe to be valuable) to my sons James R. Gray, Isaac M. Gray and Sylvanus T. Gray, and to James R. Gray, Isaac M. Gray and Sylvanus T. Gray in trust for my daughters Margaret Weltner, Ann Eliza Blackshere and Harriet B. Blackshere for their sole and separate use and benefit and in the case of the death of

one or either of them, then the trust to continue for the child or children of such daughters, deceased, and the nine-feet vein of coal mentioned in (this) my first will and testament is underlying the two farms known as the Otho Minor farm and the Knott farm." It cannot be doubted that these last words would have been held to be inserted for the express purpose of defining specifically what the nine-feet vein of coal was that he was then disposing of. Such is the necessary meaning of the words, such is their natural import when appearing in that connection, and that meaning would have to be strained, and those words would have to be disregarded, if they were to be applied to any other or larger subject-matter. The force of this conclusion is very greatly strengthened by the fact that, neither at that time nor at any time during the eleven years which elapsed after the date of the will, March 26, 1874, to the death of the testator, September 9, 1885, nor until several years after that time, was it discovered that the nine-feet vein of coal was accessible on the Weltner farm. As the testimony on this subject is entirely undisputed it will be of advantage to refer to some of it with brevity, in order that we may understand more precisely the circumstances and conditions affecting the testator at the time his will was made. The witness O. M. Boughner having stated his acquaintance with the testator and his lands, was asked: " Q. Was the coal opened upon any of the farms that William Gray owned at the date of his will? A. Yes sir. Q. That is March 26, 1874? A. Yes sir. Q. Upon what ones of the farms was the coal opened at that time? A. I believe on both farms, the Minor and Knott. Q. And upon any other of the farms he owned at that time that you know of? A. The river vein of coal was not open, the nine-feet vein of coal. Q. The nine-feet vein of coal at the date of his will was open on the Minor farm and the Knott farm. A. Yes, sir. Q. But not upon any other farm he had? A. No, sir. Q. Has the nine-feet vein of coal been opened upon any other farms of which William Gray died seized, since his death? A. Yes, sir. Q. Upon what farms? A. Upon the Merrill farm. Q. When was the coal opened upon the Merrill farm? A. I do not know that I can tell you that exactly, it was between 1885 and 1892, I suppose along about 1887 or 1888. . . . Q. William Gray owned a large dis-

tillery in his lifetime I believe, at Gray's landing? A. Yes, sir. Q. How far is that distillery from the coal mines which were opened upon the Knott farm and Minor farm? A. I suppose about a mile. Q. Was it known prior to 1887 or 1888 that the nine-feet vein of coal was accessible upon the Merrill farm? A. No sir, it was not. Q. Do you know whether search was made and attempts made to discover the nine-feet vein of coal upon the Merrill farm for some time prior to its opening? A. Yes, sir, two or three different times. Q. What was the result? A. Well they reported they could not find it. Q. How far did William Gray live from the coal mines that were opened upon the Minor farm and Knott farm? A. I suppose about two and a half miles. . . . Q. Do you know where William Gray during his lifetime got his coal to supply his home and home farm? A. Yes, sir, got it from the mines opened on the Minor and Knott farm. Q. Did he get any coal for his home from any other mine? A. No, sir. Q. William Gray had numerous tenement houses on his various farms? A. Yes, sir. . . . Q. Do you know what tenement houses were supplied with coal? A. I think all the farms and all the tenement houses got coal from the mines upon those two farms."

Samuel Dunlap another witness having stated his acquaintance with William Gray and his farms was asked: "Q. Do you know upon what farms he had the nine-feet vein of coal open in his lifetime? A. Well it was understood by me it was the Minor farm and Knott farm. Q. Was the nine-foot vein of coal open on any other farm that you know of? A. No sir."

The witness Boughner was also asked: "Q. If William Gray had known in his lifetime that the nine-feet vein of coal was accessible upon the other farms, could he have supplied his distillery, his home farm and the farms occupied by his children and tenants from mines much nearer than those at the Knott and Minor farms? A. About half a mile nearer."

It is thus apparent that when the will was made and during the remainder of his life, William Gray had no knowledge of the existence of the nine-feet vein of coal under the Weltner farm of seventy-four acres, and that he knew all about the vein as it was opened and in full operation under the Minor and Knott farms, and that all the coal he was using at his distillery and at

his house and at the homes of his children and his tenants, and whatever coal he sold was taken from that vein. In view of all these matters it is very difficult to conceive that he had any other vein or deposit of coal than this one in mind at the time he made his will. And when eleven years after that when he made the third codicil he expressly declared that the nine-feet vein of coal mentioned in his will, was the one underlying the two farms known as the Otho Minor farm and the Knott farm, we are fairly shut up to the conclusion that the vein of coal devised by his will was that particular vein and no other. He says in the codicil, "the nine-feet vein" that is the real actual and particular vein which he devised by his will, was the vein which underlaid his two farms known as the Minor and Knott farms. Not the coal, nor the vein of coal underlying all his lands, but the particular vein, called the nine-feet vein, which underlaid two only of all the farms he had mentioned in his will. If the ruling of the learned court below is correct the testator must be held to have intended all the coal contained in a vein of nine feet in thickness underlying all his farms mentioned in the will notwithstanding he expressly declares he intended the vein underlying only two of those farms. We do not see how we can take any such liberties with the plain words of the testator. Especially is this the case when it is considered that he went out of his way to make this declaration, because if he believed that he had already devised the vein, as it lay under all his lands, and such was his real intention, there was not only no occasion to make the declaration contained in the codicil, but by making it he simply created confusion and gave occasion for most serious contention and litigation as to what his meaning really was. Certainly he would carefully avoid doing anything of that kind. The far more satisfactory explanation of the declaration in the codicil is that he discovered that the general language used in the will in describing the nine-feet vein which he there devised, might lead to doubt and uncertainty as to what his meaning really was, and therefore to relieve the matter of all doubt and to make his meaning perfectly clear he declared in the codicil that the vein of coal devised in the will was the vein that underlaid the two tracts only. Upon this theory it is perfectly easy to understand why it was that he made the very important explanation and declaration contained in the codicil.

There is another reason for this conclusion almost equally convincing and that is that if he meant to devise the nine-feet vein under all his lands, none of his devisees could take a sure title to any of the lands devised to them. The devises were all in fee simple and of course included all coal lying beneath the surface. But as the presence of the nine-feet vein was not known at the time the will was made nor for many years after, except under the Minor and Knott farms, the title of each devisee would remain in a state of entire uncertainty for an indefinite number of years after the death of the testator. If at any time in the future a nine-feet vein should be discovered no matter at what depth beneath the surface, it would not belong to the devisee of the land, but to the devisees of the coal named in the will. The owners of the surface could never know whether they had a real fee simple title to their lands or not. This uncertainty would be a most serious cloud upon their titles, and would bring about the greatest difficulties in selling them. It would interfere with their disposition long after the deaths of the devisees and would greatly embarrass the settlement of their estates. Such a condition of things in the face of such devises as are contained in this will ought not to be brought about if it can possibly be avoided. Certainly we cannot impute such an intention to the testator except upon the plainest and clearest interpretation of his actual testamentary words. And as we have shown, there are no such words in the will. There are several other tests of the testamentary intent in this case which might be applied, tending to the same conclusion, but they are of minor importance and need not be considered. It is very plain to us that the testator manifestly intended to limit the devise of the nine-feet vein of coal devised by the will, to the two tracts known as the Minor and Knott farms, and that disposes of the contention. The assignments of error are sustained.

Judgment reversed and judgment is now entered in favor of the plaintiff and against the defendant on the verdict for $2,203.93 with costs of suit.