## Weltner, Appellant, *v.* Brown.

*Wills—Will and codicil—Construction.*

Where testator devised six farms to his children, and further devised a vein of coal underlying said lands to his children, in a manner provided, and by a codicil to his will in making reference

to the gift of the vein of coal, described it as underlying only two of the said farms, which he specifically named, the gift will be construed to carry the vein of coal underlying said two farms only, especially as it appeared that the gift of all six of the farms was in language sufficiently broad to carry the coal as well as the surface, except for the special gift of the vein underlying the farms mentioned. The explanation in the codicil of the language previously used in the will will be read as a part of the will itself.

Cruzen v. Boughner, 196 Pa. 12, followed.

Argued Oct. 5, 1914. Appeals, Nos. 108 and 109, Oct. T., 1914, by plaintiffs, from judgments of C. P. Greene Co., Sept. T., 1913, Nos. 101 and 102, on directed verdict for defendant, in case of Charles W. Weltner, Daisy W. Laidley, Minnie Weltner, Pearle Weltner and Eunice A. Weltner v. W. Harry Brown. Before FELL, C. J., BROWN, POTTER and ELKIN, JJ. Affirmed.

Ejectment for the recovery of veins of coal in Greene County. Before INGHRÁM, P. J.

The facts appear in the opinion of the Supreme Court and in Cruzen v. Boughner, 196 Pa. 12.

Verdict for defendant by direction of the court and judgment thereon. Plaintiffs appealed.

*Errors assigned* were in directing a verdict for defendant and answers to points.

*A. H. Sayers,* with him *Charles G. McIlvain* and *W. R. Murphy,* for appellant.

*W. J. Sturgis,* of *Reppert, Sturgis & Morrow,* with him *George C. Burgwin* and *Kyle & Reinhart,* for appellee, cited: Cruzen v. Boughner, 196 Pa. 12.

OPINION BY MR. JUSTICE BROWN, January 2, 1915:

William Gray died September 9, 1885. At the time of his death he was the owner of a number of farms in Greene County which were underlaid with coal. By the

second and sixth clauses of his will, executed March 26, 1874, he devised six of these farms in terms which unquestionably passed to the devisees the underlying coal as well as the surface; but by the ninth clause he provided as follows: "I give, devise and bequeath the whole nine (9) feet vein of coal underlying the lands mentioned in this my will (and which I believe to be valuable), to my sons, James R. Gray, Isaac M. Gray and Sylvanus T. Gray, and to James R. Gray, Isaac M. Gray and Sylvanus T. Gray in trust for my daughters, Margaret Weltner, Ann Eliza Blackshire and Harriet B. Blackshire, for their sole and separate use and benefit, and in case of the death of either one of my daughters then the trust to continue for the child or children of such daughters deceased. I further direct that the said coal underlying the aforesaid lands shall be held for the interest of my said sons, and by my said sons in trust for my said daughters jointly, my object being to give each of my sons and daughters an equal share in all profits derived from the sale of said coal, or from any royalty, or profits in working or in leasing said coal vein. I direct that any and all interest accruing to my said sons in trust for my said daughters shall be subject to the same conditions heretofore made in this will relating to them." Margaret Weltner, the daughter of the testator, named in the foregoing clause of his will, died December 21, 1881, leaving to survive her children, who are the plaintiffs in these actions, brought to recover an undivided interest in the coal underlying the six farms devised by the second and sixth clauses of the will. They base their right to recover on the ninth clause, their contention being that it gave an undivided interest in the coal underlying the said farms to their mother, which, upon her death, passed to them. If nothing more appeared in the will, it may be assumed they would have the right to recover, notwithstanding the absolute devises of the farms to others, as found in the second and sixth clauses of their grandfather's will.

But more does appear. On July 2, 1885—more than three years and six months after the death of his daughter, Margaret—testator added a third codicil to his will, by the fourth paragraph of which he directed as follows: "I also revoke all other papers in my former first will and codicils relating to my daughter, Margaret Weltner (excepting the one referring ,to her interest in the nine (9) feet vein of coal mentioned in my first will and testament, her interest to remain as stated in my first will and testament for the benefit of any of her surviving children. The (9) nine feet vein of coal mentioned in my first will and testament is underlying the two farms known as the Otho Minor farm and the Knott farm." The Otho Minor and the Knott farms were devised by the fifth clause of the will in trust for the separate use of the daughter, Margaret.

The question raised on these appeals is whether the right of the plaintiffs in the coal left by their grandfather extends to that which underlies all the farms mentioned in his will, or is confined to two—the Otho Minor and Knotts—specified in the fourth paragraph of the third codicil. This identical question, after argument and reargument, was passed upon by six members of the court—Mr. Justice MESTREZAT not sitting—in Cruzen v. Boughner, 196 Pa. 12, and we there held that the children of Margaret Weltner had no interest in the coal underlying the six farms involved in these actions. In holding that this was the unmistakable intention of the testator, Mr. Chief Justice GREEN said, inter alia: "Now the question to be decided is what was the testator's meaning when in the ninth clause of the original will he said, 'I give, devise and bequeath the whole nine (9) feet vein of coal underlying the lands mentioned in this my will (and which I believe to be valuable) to my sons, James R. Gray,' etc. Did he mean thereby all the coal which might then, or at any time in the future, be found in a vein of nine feet in thickness, lying under all the numerous tracts of land which he then owned, some

seventeen hundred acres in all, not continguous but separated from each other by distances as great as two and a half miles, or did he mean the coal contained in a vein of nine feet in thickness which was then, and for a long time before had been, worked and which was underlying the two tracts called the Minor farm and the Knott farm? For some reason he was revoking in the fourth clause of this codicil, his previous devises and bequests in the will and prior codicils in favor of his daughter, Margaret Weltner, but he wished to and did, except out of the revocation her interest in the nine-feet vein of coal as given by his will, and that interest he directed should remain for her and for her surviving children. Then for the manifest purpose of defining what he meant by the nine-feet vein of coal devised and given by the will, he added to the fourth clause of the third codicil these words, 'The nine feet vein of coal mentioned in my first will and testament, is underlying the two farms known as the Otho Minor farm and the Knott farm.' In considering what was his meaning in using these words in the third codicil, it will be of importance to reflect, supposing the same words had been used in the ninth clause of the will when he was devising the nine-feet vein of coal to his sons for their use and as trustees for his daughters, what import would then have been attached to them? The ninth clause of the will would then have read, 'I give, devise and bequeath the whole nine (9) feet vein of coal underlying the lands mentioned in this my will (and which I believe to be valuable) to my sons James R. Gray, Isaac M. Gray and Sylvanus T. Gray, and to James R. Gray, Isaac M. Gray and Sylvanus T. Gray in trust for my daughters Margaret Weltner, Ann Eliza Blackshire and Harriet B. Blackshire for their sole and separate use and benefit and in the case of the death of one or either of them, then the trust to continue for the child or children of such daughters deceased, and the nine-feet vein of coal mentioned in (this) my first will and testament is under-

lying the two farms known as the Otho Minor farm and the Knott farm.' It cannot be doubted that these last words would have been held to be inserted for the express purpose of defining specifically what the nine-feet vein of coal was that he was then disposing of. Such is the necessary meaning of the words, such is their natural import when appearing in that connection, and that meaning would have to be strained, and those words would have to be disregarded, if they were to be applied to any other or larger subject-matter......He says in the codicil, 'the nine-feet vein' that is the real actual and particular vein which he devised by his will, was the vein which underlaid his two farms known as the Minor and Knott farms. Not the coal, nor the vein of coal underlying all his lands, but the particular vein, called the nine-feet vein, which underlaid two only of all the farms he had mentioned in his will. If the ruling of the learned court below is correct the testator must be held to have intended all the coal contained in a vein of nine feet in thickness underlying all his farms mentioned in the will notwithstanding he expressly declares he intended the vein underlying only two of those farms. We do not see how we can take any such liberties with the plain words of the testator. Especially is this the case when it is considered that he went out of his way to make this declaration, because if he believed that he had already devised the vein, as it lay under all his lands, and such was his real intention, there was not only no occasion to make the declaration contained in the codicil, but by making it he simply created confusion and gave occasion for most serious contention and litigation as to what his meaning really was. Certainly he would carefully avoid doing anything of that kind. The far more satisfactory explanation of the declaration in the codicil is that he discovered that the general language used in the will in describing the nine-feet vein which he there devised, might lead to doubt and uncertainty as to what his meaning really was, and therefore to relieve the mat-

ter of all doubt and to make his meaning perfectly clear he declared in the codicil that the vein of coal devised in the will was the vein that underlaid the two tracts only. Upon this theory it is perfectly easy to understand why it was that he made the very important explanation and declaration contained in the codicil......
It is very plain to us that the testator manifestly intended to limit the devise of the nine-feet vein of coal devised by the will, to the two tracts known as the Minor and Knott farms, and that disposes of the contention." It is conceded that we must now practically reverse our judgment which followed these well-considered utterances by Chief Justice GREEN, or the present plaintiffs cannot recover.

It is urged that appellants are not bound by what was decided in Cruzen v. Boughner, because they were not parties to that proceeding. As they were not, it is to be conceded that it is their right to be now heard on the question passed upon in a controversy between other parties, but, for the reasons there given, in those portions of the opinion of the court which we have quoted, we are again of opinion that the intention of the testator is too clear from the words used in the third codicil to permit the plaintiffs to recover. Another contention of their counsel in asking us to depart from Cruzen v. Boughner is that "the controlling" reason for our judgment in that case was a finding that, neither at the time the testator made his will not at any time during the eleven years which elapsed between the date of its execution and his death, was it known that the nine-feet vein of coal was accessible on the Weltner farm, one of the six devised by the second and sixth clauses of the will. It is earnestly urged that this finding was not justified by the evidence in the case. Whether it was or not is immaterial, for it did not control us in any degree in interpreting the unequivocal words of the codicil. What we said was that the meaning which we gave to those words was "greatly strengthened" by the fact that the

testator. had no knowledge, either at the time he made his will or subsequently, that the nine-feet vein of coal was accessible on the Weltner farm. In the present actions plaintiffs submitted evidence showing that he must have known this from the time he made his will until he died, but such knowledge, instead of helping the appellants, bears against them, for, conceding that the testator did know that the six farms devised by the second and sixth clauses of his will were underlaid with coal, he nevertheless specifically limited the interest of these plaintiffs to the coal underlying the Otho Minor and Knott farms. We can add nothing to the clear and convincing reasoning of Mr. Chief Justice GREEN, showing this to have been the unmistakable intention of the testator as gathered from the third codicil to his will. The judgment in each case is affirmed.